UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

MONICA ILENE ANAYA,

    Plaintiff,

v.                                                                                                 Civ. No. 15-1117 GJF

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

    Defendant.

## ORDER GRANTING IN PART PLAINTIFF'S MOTION TO REMAND

THIS MATTER is before the Court on Plaintiff Monica Anaya's "Motion to Reverse and Remand for a Rehearing with Supporting Memorandum" ("Motion") [ECF No. 18]. Having meticulously reviewed the entire record, considered the parties' arguments, and being otherwise fully advised, the Court finds the Appeals Council erred in failing to consider newly submitted evidence which post-dated the ALJ's decision. For the following reasons, the Court will GRANT in part and DENY in part Plaintiff's Motion, and will remand this matter with instructions that the Appeals Council consider the new evidence.

**I.  PROCEDURAL BACKGROUND**

On November 2, 2011, Plaintiff applied for disability insurance benefits, alleging that her disability began on January 10, 2010. Administrative R. ("AR") 157-58. Plaintiff's application was initially denied on April 4, 2012 [AR 75-85], and upon reconsideration on February 21, 2013. AR 86-99. Plaintiff then filed a written request for hearing, and, on November 7, 2013, Administrative Law Judge ("ALJ") Ben Willner held a hearing in Albuquerque, New Mexico. Plaintiff testified at the hearing and was represented by counsel. The ALJ also heard testimony from Tom Griner, an impartial vocational expert. AR 46-74.

1

On February 24, 2014, the ALJ issued a decision, concluding that Plaintiff had not been under a disability within the meaning of the Social Security Act (""the Act") since the date the application was filed.  AR 25-41.  Plaintiff requested the ALJ's decision be reviewed by the Appeals Council, and, on November 2, 2015, the Appeals Council denied her request.  AR 1-4.  Consequently, the ALJ's decision became the final decision of the Commissioner.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether the decision is supported by substantial evidence and whether the correct legal standards were applied.  *See* 42 U.S.C. § 405(g) (2015); *see also Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).  "The failure to apply the correct legal standards or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).  "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'"  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)); *see Hamlin*, 365 F.3d at 1214 ("[B]ecause our review is based on the record taken as a whole, [the Court] will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial . . .").

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989)). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988)). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted). "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. SUMMARY OF ARGUMENTS

Plaintiff argues that the ALJ and the Appeals Council committed reversible legal error for two reasons: (i) the Appeals Council erred in refusing to consider new evidence submitted by Plaintiff, erroneously concluding that the new evidence was not chronologically pertinent; and (ii) the ALJ failed to give proper consideration to the opinion of the consultative examining psychologist, Michael Emery, Ph.D. *See* Pl.'s Mot. 1, ECF No. 18. Defendant argues that neither the Appeals Council nor the ALJ committed reversible legal error. First, she asserts that the Appeals Council acted reasonably in its treatment of evidence submitted four months after

the ALJ's final decision.  Furthermore, Defendant contends that the ALJ reasonably assessed Dr. Emery's opinion.  *See* Def.'s Br. in Resp. to Pl.'s Mot. to Reverse and Remand the Agency's Administrative Decision ("Resp.") 1, ECF No. 20.

## IV. APPLICABLE LAW AND SEQUENTIAL EVALUATION PROCESS

### A. Legal Standard

For purposes of Social Security disability insurance benefits, the term "disability" means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (2015).  To determine if an individual is disabled, the Social Security Administration utilizes a five-step sequential evaluation process, 20 C.F.R. § 404.1520 (2015), with each step being followed in order.  *Id.* § 404.1520(4).  If it is determined that the individual is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.  *Id.*

The claimant bears the burden of establishing a prima facie case of disability at steps one through four.  *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).

> At step one, the claimant must show "that he is not presently engaged in substantial gainful activity;" at step two "that he has a medically severe impairment or combination of impairments;" at step three that the impairment is "equivalent to a listed impairment;" and, at step four, "that the impairment or combination of impairments prevents him from performing his past work."

*Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (quoting *Williams*, 844 F.2d at 750-52).  At step five, "the burden shifts to the Commissioner to show the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given his age, education, and work experience."  *Id.* (quoting *Williams*, 844 F.2d at 751).

B. **ALJ Decision**

On February 24, 2014, the ALJ issued a decision denying Plaintiff's application for benefits. In doing so, the ALJ conducted the five-step sequential evaluation process. AR 28-41. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 10, 2010, the date of her alleged disability onset. At step two, the ALJ determined Plaintiff had the following severe impairments: affective disorder referenced as major depressive disorder, generalized anxiety disorder, and insomnia.[1] The ALJ found these impairments to be severe because "they more than minimally affect [Plaintiff's] ability to perform basic work activities." AR 30.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1.[2] AR 31-33. In reaching this conclusion, the ALJ reviewed Plaintiff's subjective statements regarding her condition, objective medical reports, and opinion evidence. The ALJ evaluated Plaintiff's mental impairments under Listings 12.02, 12.04, and 12.06.[3]

Focusing solely on Plaintiff's mental impairments, the ALJ first found she experiences a mild restriction in her activities of daily living. The ALJ based this finding on Plaintiff's ability to provide for her two young children, prepare meals, and do household chores. Next, he found that Plaintiff experiences moderate difficulties in social functioning. The ALJ premised this

---

[1] At step two, the ALJ also identified the following conditions, though finding each to be non-severe: Plaintiff's body mass index (slightly above 30, indicating she met the medical standard of obesity), migraine headaches, a possible thyroid disorder, a diagnosis for Posttraumatic Stress Disorder (PTSD), and past substance abuse. Administrative R. ("AR") 30-31.

[2] The specific sections of the Code of Federal Regulations the ALJ referenced include: 20 CFR §§ 404.1520(d), 404.1525, and 404.1526 (2016). AR 31.

[3] Listings 12.02, 12.04, and 12.06 concern, respectively: organic mental disorders, affective disorders, and anxiety/obsessive-compulsive disorders.

finding on Plaintiff's reports and the consultative examiner's report, both of which indicated that she suffers from anxiety. Lastly, the ALJ found that Plaintiff experiences moderate difficulties with regard to concentration, persistence, and pace. The ALJ based this finding on Plaintiff's medication noncompliance and the general symptoms she experiences. AR 31-33.

Based on these findings, the ALJ held that Plaintiff's mental impairments did not satisfy the paragraph B criteria for Listings 12.02 (organic mental disorders), 12.04 (affective disorders), or 12.06 (anxiety and obsessive-compulsive disorders) because her mental impairments did not rise to the level of "marked restriction" or "marked difficulties" and because they had not caused any episodes of decompensation.[4] Additionally, the ALJ determined the paragraph C criteria were also not satisfied.[5] The ALJ found "no evidence she has ever been hospitalized secondary

---

[4] Paragraph B in Listings 12.02, 12.04, and 12.06 describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations described below must be the result of the mental disorder described in the diagnostic description. Paragraph B states:

> Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2.

[5] Paragraph C in Listings 12.02 and 12.04 describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations described below must be the result of the mental disorder described in the diagnostic description. Paragraph C states:

Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Paragraph C in Listing 12.06 describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations described below must be the result of the mental disorder described in the diagnostic description. Paragraph C states:

to one or more mental impairments." Moreover, the ALJ discerned no evidence to suggest that Plaintiff would "be expected to decompensate with even a minimal increase in mental demands or a change in her environment." AR 33.

Before step four, the ALJ determined Plaintiff had the following residual functional capacity ("RFC"):

> [T]o perform a full range of work at all exertional levels but with multiple nonexertional limitations. The [Plaintiff] is limited to work involving simple, repetitive tasks. The [Plaintiff] can work primarily with things rather than with people. Additionally, the [Plaintiff] is able to maintain concentration, pace and persistence on this limited range or duties for two hours at a time before taking a scheduled break and then returning to work throughout the day.

AR 33. In support of this RFC assessment, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . ." AR 36. To reach this determination, the ALJ gave significant weight to the State agency medical consultants' physical and mental assessments, including their RFC recommendations regarding Plaintiff's attention span, her contact with others, and the level of difficulty she could handle in her work. AR 36-39.

Additionally, the ALJ explained his reasoning for assigning little weight to Michael Emery, Ph.D, who opined in part that Plaintiff was "markedly impaired" in her capacity to interact with others or leave her home. AR 37. The ALJ explained he adopted Dr. Emery's recommendation in his RFC concerning Plaintiff working with things rather than people. However, the ALJ noted that although Dr. Emery used the term "markedly" many times, there was no evidence of "marked" limitations. The ALJ also considered a function report completed

---

Resulting in complete inability to function independently outside the area of one's home.

*Id.*.

7

by Plaintiff's mother, giving it limited weight because she "[did] not appear to have the necessary training or objectivity to sufficiently evaluate the [Plaintiff's] ability to perform work activities." AR 38. Describing his review of the medical evidence, the ALJ found Plaintiff was often non-compliant with her medication, and that overall, the degree of her mental health treatment was inconsistent with what one would expect for a totally disabled individual. AR 36-39.

At the fifth and final step, the ALJ noted that Plaintiff was born on June 3, 1985, and was therefore 24 years old as of the alleged disability onset date, which is considered to be a "younger individual" pursuant to 20 C.F.R. § 404.1563 (2016). The ALJ also observed that Plaintiff has a limited education, is able to communicate in English, and stated that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [Plaintiff] is 'not disabled,' whether or not [she] has transferable job skills." Plaintiff formerly worked as a teacher's aide, and the ALJ determined she would not be able to perform this past work because "the non-exertional demands of [her] prior work exceed [her] residual functional capacity." AR 39.

Because the ALJ determined Plaintiff could not return to her past work, he asked the vocational expert to consider whether there were jobs that existed in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity. AR 39-40. The vocational expert identified five jobs that such an individual would be capable of performing, including: kitchen helper (DOT[6] 318.687-010), weeder/thinner (DOT 409.687-018), bartender helper (DOT 312.687-018), cleaner/housekeeping (DOT 323.687-014), and cuff folder (DOT 685-687.014). Subsequently, the ALJ concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy,"

---

[6] DOT stands for "Dictionary of Occupational Titles."

and therefore, she was not disabled under the meaning of the Act from January 10, 2010, through the date of the decision.  AR 40.

## V. ANALYSIS

### A. Treatment of Evidence Submitted After the ALJ's Final Decision

Pursuant to 20 C.F.R. § 404.970(b) (2016), "new evidence [submitted to the Appeals Council] becomes a part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence."  *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)).  The Appeals Council is required to consider evidence submitted with a request for review "if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision." *Id.* (quoting *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995)).  "If the Appeals Council fails to consider qualifying new evidence, the case should be remanded for further proceedings."  *Id.*

Whether evidence submitted to the Appeals Council qualifies as new, material, and chronologically pertinent is a question of law subject to *de novo* review.  *Threet*, 353 F.3d at 1191. "Evidence is new within the meaning of 404.970(b) if it is not duplicative or cumulative." *Id.* (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Evidence is material to the determination of disability "if there is a reasonable possibility that it would have changed the outcome."  *Id.*  Lastly, evidence is chronologically pertinent if it relates to the time period on or before the ALJ's decision.  *Id.*

Along with her request for review, Plaintiff submitted additional evidence to the Appeals Council for consideration, including a "Medical Assessment of Ability to do Work-Related Activities (Mental)" signed by Robert Sullivan, Licensed Marriage and Family Therapist (LMFT) on June 13, 2014.  Mr. Sullivan also submitted two assessment-style forms entitled

"12.04 Affective Disorders" and "12.06 Anxiety-Related Disorders," signed on June 13, 2014. AR 13-17.  In denying Plaintiff's request for review, the Appeals Council explained it reviewed Mr. Sullivan's opinions and determined "[t]his new information [was] about a later time" and therefore it did not affect the disability determination.  AR 1-4.

In *Padilla v. Colvin*, the Tenth Circuit explained that when the Appeals Council dismisses evidence on the grounds that it is not temporally relevant, this indicates that the evidence did not qualify for consideration at all.  *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013) (unpublished).  Applying that logic here, this Court must conclude that the Appeals Council did not consider Mr. Sullivan's opinions at all based on its belief that the new evidence was not chronologically pertinent.[7]  The narrow question before this Court, therefore, is whether the Appeals Council erred as a matter of law in failing to consider the new evidence submitted to it.  In so doing, this Court will refrain from discussing its view on the credibility of this evidence or the weight it should receive, and will only focus on whether the evidence should have been considered by the Appeals Council.

Plaintiff argues that Mr. Sullivan's opinions satisfied every requirement for consideration by § 404.970(b) in that they were new, material, and chronologically pertinent.  Therefore, she contends, this Court should remand this case because the Appeals Council erroneously rejected this evidence.  *See* Pl.'s Mot. 12-16.  Because Mr. Sullivan treated her in October 2013, Plaintiff argues that his June 2014 opinions necessarily related back to a period before February 24, 2014, which was the date of the ALJ's decision.  *Id.*  In response, Defendant argues that the Appeals Council properly chose not to consider the evidence because it was outside of the relevant time

---

[7] Although *Padilla v. Colvin* is an unpublished decision, published Tenth Circuit case law supports this Court's analysis and conclusion as well.  *See, e.g., Threet v. Barnhart*, 353 F.3d 1185 (10th Cir. 2003) (holding that MRI test done one day before ALJ's decision qualified as new, material, and chronologically pertinent evidence, and the Appeals Council's failure to consider it was legal error necessitating remand); *see also Blea v. Barnhart*, 466 F.3d 903 (10th Cir. 2006) (holding that letter from treating physician that was provided only to the Appeals Council should have been considered as part of the record, the failure to do so necessitating remand).

period.  Def.'s Resp. 14.  Defendant contends that "such evidence should not have been considered by the Appeals Council and, in any event, would not change the outcome of this case." *Id.*

The record reflects Plaintiff was treated by Mr. Sullivan a total of three times, on the following dates: October 3, 2013; October 8, 2013; and, October 15, 2013.  AR 265.  On October 28, 2013, Mr. Sullivan wrote a letter regarding Plaintiff, stating, "I concur with the diagnostic conclusions and mental status evaluations from Rio Rancho Family Health Center dated 08/02/2013."  AR 399.  There is no evidence in the administrative record that he saw Plaintiff after October 2013.  Nor does the administrative record bear any indication of Mr. Sullivan offering any additional opinions regarding Plaintiff's condition until he submitted the opinions in question in June 2014.

The Court holds that the Appeals Council erred in failing to consider Mr. Sullivan's opinions that post-dated the ALJ's decision.  Mr. Sullivan's June 2014 opinions are new within the meaning of § 404.970(b) because they are neither cumulative nor duplicative.  The opinions had not yet been prepared when the ALJ issued his decision.  Defendant concedes in her briefing the opinions were new, but argues they were not material nor chronologically pertinent.  Def.'s Resp. 15.  Yet, Mr. Sullivan's June 2014 opinions outlined more extreme limitations than were encompassed in the ALJ's RFC.  Therefore, they are material because there is at least a reasonable possibility they would have affected the outcome of Plaintiff's disability determination.  The parties' main dispute is whether the opinions are chronologically pertinent.

In *Padilla v. Colvin*, the Tenth Circuit Court of Appeals did not require newly submitted evidence to the Appeals Council to pre-date the ALJ's decision in order for it to qualify as chronologically pertinent.  *Padilla v. Colvin*, 525 F. App'x 710 (10th Cir. 2013) (unpublished).

Rather, the court focused on whether the new evidence was pertinent to the issues that had been before the ALJ. The plaintiff in *Padilla* submitted evidence of non-exertional limitations that post-dated the ALJ's unfavorable decision in an effort to challenge the ALJ's RFC, which only focused on Plaintiff's exertional limitations. *See generally id.* As in this case, the Appeals Council rejected the evidence on the basis that it was not chronologically pertinent. *Id.* at 711. The district court affirmed the Commissioner's denial of benefits. *Id.*

On appeal, the Tenth Circuit overturned the district court's decision, holding the evidence was temporally relevant because it related to issues that were considered during the time period in question. *Id.* at 713. The court reasoned that the psychological report submitted related to an anxiety diagnosis the plaintiff reported before the ALJ made his decision, and an audiological report related to the plaintiff's administrative hearing testimony. *Id.* For these reasons, the court held the evidence to be temporally relevant and remanded the case with instructions to the Appeals Council to consider the evidence. *Id.*

This case is similar to *Padilla* in that newly submitted evidence which post-dated the ALJ's unfavorable decision was rejected by the Appeals Council on the basis that it was not chronologically pertinent. Following the Tenth Circuit's reasoning in *Padilla*, this Court must decide whether Mr. Sullivan's June 2014 opinions related to Plaintiff's disabling conditions in question (major depressive disorder, generalized anxiety disorder, and insomnia) during the relevant time period, January 10, 2010 thru February 24, 2014.

The Court finds that Mr. Sullivan's opinions do concern functional limitations related to Plaintiff's mental conditions and affective disorders and accordingly, are chronologically pertinent. The opinions from Mr. Sullivan are based on Plaintiff's ability to do work-related activities despite her mental health problems. These ailments were clearly before the ALJ, *see*

12

AR 30 (finding Plaintiff has the following severe impairments: major depressive disorder, generalized anxiety disorder, and insomnia). Additionally, these opinions are related to the time period in question because Mr. Sullivan only treated Plaintiff in October 2013, which is squarely within the period of alleged disability. Although rendered in June 2014, Mr. Sullivan's opinions necessarily related back to October 2013 because that appears to be the only time period during which he treated her.

Because Mr. Sullivan's opinions qualify as new, material, and chronologically pertinent under § 404.970(b), the Court will require the Appeals Council to consider them.

### B. Opinion Evidence of Michael Emery, Ph.D

Plaintiff asks this Court to find that the ALJ erred in his evaluation of the opinions of the consultative examining psychologist, Michael Emery, Ph.D. Pl.'s Mot. 17-19. In essence, Plaintiff asserts that the ALJ did not accord the proper weight to Dr. Emery's opinions, and had the ALJ done so, the ultimate outcome on disability would have been different.

The Secretary has broad discretion in ordering consultative examinations. *See Hawkins v. Charter*, 113 F.3d 1162, 1166 (10th Cir. 1997) (citing *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)). "[W]here the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim." *Id.*

Social Security Ruling 96-6p provides guidance on how to consider opinions of consultative examiners, including opinions of psychological consultants. SSR 96-6p, 1996 WL 374180. Findings of fact made by a consultative examiner "must be treated as expert opinion evidence of nonexamining sources." *Id.* ALJs and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions. *Id.* The Ruling explains that

because opinions of consultative examiners are weighed by stricter standards than those who are treating sources,

> the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

*Id.*

The sole basis for Plaintiff's argument is the ALJ's decision to assign "little weight" to Dr. Emery's opinions. In assigning little weight to Dr. Emery's opinions, the ALJ provided the following support:

> Unclear if any of the medical exhibits included in the record at the time were reviewed, Dr. Emery opined the [Plaintiff] was "markedly impaired by intruding anxiety on the mental status and I suspect capacity to leave home and interact with others is similarly impaired by the anxiety plus depressive avolition and isolation. Memory, understanding, and persistence are less impaired." Dr. Emery concluded the report by finding the [Plaintiff] was functioning at a score of 55. The use of the term "markedly" appears inconsistent with the functioning score suggesting only moderate limitations as outlined in the *Diagnostic and Statistical Manual of Mental Disorders*. Though Dr. Emery did outline evidence of anxiety, the undersigned is unable to excluded [sic] whether this was secondary to medication noncompliance. Considering the evidence submitted since coupled with the [Plaintiff's] testimony, there is no clear evidence of "marked" limitations. However, the undersigned considered Dr. Emery's statement with the moderate assessment when reducing the [Plaintiff] to work activities requiring her to work with things rather than people.

AR 37-38.

The Commissioner argues that the ALJ sufficiently explained why he assigned Dr. Emery's opinions little weight. The Commissioner further asserts that "the ALJ reasonably discounted the more extreme and contradictory portions of Dr. Emery's opinion." Def.'s Resp.

14

12. Specifically, as to Dr. Emery's use of the term "markedly," the Commissioner contends his report did not define the term and furthermore, its use contradicted other parts of his assessment. *Id.* at 13. Because of the contradictions surrounding the term, "[t]he ALJ resolved this conflict by looking to the objective medical evidence in the balance of the record, and he reasonably found that this evidence supported no more than moderate limitations." *Id.*

This Court finds that the ALJ did not err in his treatment of Dr. Emery's opinions. SSR 96-6p makes clear an ALJ must explain the weight given to a consultative examiner's opinions. In this case, the ALJ did exactly that; he assigned little weight to Dr. Emery's opinion and proceeded to articulate his reasons for doing so. The ALJ took issue with Dr. Emery's use of the term "markedly" throughout his opinion because it was not defined and appeared inconsistent with the medical evidence in the record. He articulated his concern about Plaintiff's medication noncompliance and explained this was the basis for questioning Dr. Emery's opinion as it related to the severity of Plaintiff's anxiety. Lastly, he included a portion of Dr. Emery's opinion in Plaintiff's RFC assessment, determining that she should work with things rather than people. *See* AR 37-38.

Whether the Court would have evaluated Dr. Emery's opinion differently if it were reviewing the evidence *de novo* is not the subject of this Order. The Court is constrained to reviewing whether the ALJ erred as a matter of law in its treatment of Dr. Emery's opinion. It is not the proper role of this Court to substitute its judgment for that of the ALJ. "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *See Bowman*, 511 F.3d at 1272 (quoting *Casias*, 933 F.2d at 800). It is the Court's role, however, only to determine if the ALJ properly explained his reasoning for assigning little weight to Dr. Emery, a consultative examining psychologist. The Court finds that the ALJ

properly considered Dr. Emery's opinion, assigned it the weight he felt it warranted, discounted it due to other medical evidence in the record, and satisfactorily explained his reasoning. Consequently, this Court denies Plaintiff's Motion to the extent it is predicated on the ALJ's allegedly improper consideration of Dr. Emery's opinions.

## VI. CONCLUSION

For the reasons stated above, the Court **FINDS** the Commissioner's decision should be remanded for further proceedings, specifically including proper consideration by the Appeals Council of Mr. Sullivan's June 2014 opinions.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion is **GRANTED** to the extent that this case is **REMANDED** for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion is **DENIED** in all other respects.

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*